ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ANDREW PAULSON (CABN 267095)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    andrew.paulson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) CASE NO. 4:22-cr-00341-HSG |
|---|---|
| Plaintiff, | ) **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | ) |
| ANDREW TOKI, | ) Date: October 16, 2024 |
| Defendant. | ) Time: 2:00 p.m.<br>) Court: Honorable Haywood S. Gilliam, Jr. |

## I. INTRODUCTION

On February 6, 2022, Andrew Toki got in an argument with a man on a BART train. During the argument, Toki pulled out a loaded Glock-style privately made firearm (PMF or "ghost gun") and wracked the slide. When police tried to apprehend him at the Coliseum stop, Toki ran and eventually jumped off the walkway connecting the BART stop to the Coliseum, resulting in him suffering a significant head injury.

A grand jury indicted Toki for being a felon in possession of ammunition on September 8, 2022. On February 1, 2023, Toki pleaded guilty to the sole count in the indictment. Since his indictment in this case, it appears that Toki has turned his life around. He is diligently working to continue to address his mental health and substance abuse issues. He was working full time until he resigned his job to become

a full-time student. With this in mind, Probation recommends that the Court sentence Toki to five years' probation. The government joins in the recommendation.

## II.    OFFENSE CONDUCT

Just before 9:00 p.m. on February 6, 2022, Toki got into an argument with a man on a BART Train heading north towards the Oakland Coliseum. During the argument, Toki pulled a PMF out of his backpack and racked the slide, thereby chambering a round. Toki eventually put the PMF in his waistband. When the train arrived at the Coliseum stop, Toki got off.

As Toki exited the Coliseum station, BART officers attempted to stop him. Toki ran across the street, up the stairs to the walkway connecting the BART station to the stadium, and towards the Coliseum. As he ran up the stairs, the PMF fell out of his waistband and onto the stairs, where a BART officer recovered it. When Toki reached the Coliseum side, which was locked at that time, he jumped off the walkway and onto the Amtrak parking lot below. Toki suffered a serious head injury because of the fall.

## III.    PROCEDURAL HISTORY

On September 8, 2022, a grand jury indicted Toki, charging him with one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). Toki pleaded guilty to that charge on February 1, 2023.

Following his guilty plea, the Court referred Toki for a CAP assessment. By that time, Toki had been actively engaged in a series of programs to address his mental health and addiction needs. Though Toki had shown some progress, the CAP assessment noted that Toki's mental health decompensated significantly when he did not comply with his prescribed medication regiment. As a result, in August 2023, Pretrial informed the parties that it did not believe Toki was an appropriate fit for CAP.

On October 4, 2023, the Court continued the sentencing in this case pursuant to Toki's request and ordered him to abide by eleven conditions proposed by Pretrial. *See* Dkt. 47, 48. Over the course of the next year, the Court held regular status conferences to check on Toki's compliance and progress. According to Pretrial, except for a few minor setbacks, Toki has generally thrived. He has regularly attended therapy and group sessions to address his mental health and substance abuse issues, tested negative for illicit substances, obtained full-time employment, and continued his education. Following the latest positive report from Pretrial, the Court set this case for sentencing on October 16, 2024.

## IV. THE GUIDELINES CALCULATION

The government objects to the Guidelines calculation in the PSR. *See* PSR ¶¶ 18-26. The government believes that *United States v. Gomez*, No. 23-435, 2024 WL 4033084 (9th Cir. Sept. 4, 2024) (holding that convictions under Cal. Penal Code § 245(a) are not "crimes of violence" for purposes of the Guidelines) was wrongly decided and hopes that the Ninth Circuit will vacate the decision soon. Prior to *Gomez*, Toki's 2012 and 2018 convictions for assault with a deadly weapon in violation of Cal. Pen. Code §§ 245(b) and (a) (respectively), would have qualified as crimes of violence under U.S.S.G. §§ 2K2.1(a)(2) and 4B1.2(a)(1). Had they qualified, the base offense level in this case would have been 24. Accounting for a three-level reduction for acceptance of responsibility, Toki's adjusted offense level would have been 21. With a Criminal History Category of IV, Toki's Guidelines range would have been 57-71 months.

The government recognizes, however, that *Gomez* is currently controlling, and that it appears to apply to all convictions under Cal. Penal Code §§ 245(a) and (b). As such, the Guidelines must be calculated accordingly. Pursuant to *Gomez*, neither of Toki's § 245 convictions constitute crimes of violence. As a result, the PSR properly calculates the Guidelines in this case, which are set forth below for the Court's convenience.

| **Count 1: Felon in Possession of Ammunition (18 U.S.C. § 922(g)(1))** | | |
|---|---|---|
| | **U.S.S.G. Section** | **Level/Points** |
| Base offense level | § 2K2.1(a)(6) | 14 |
| Acceptance of responsibility | § 3E1.1 | -2 |
| Total offense level | | 12 |
| Criminal History Category | | IV |
| **RANGE** | | **21-27 months** |

## V. LEGAL STANDARD

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

## VI.   SENTENCING RECOMMENDATION

The behavior in this case is exceptionally serious. So too is Toki's violent criminal history. Toki, who has multiple convictions for violent offenses, took a loaded PMF on a BART train with other passengers, brandished it during an argument with another person on the train, and then wracked the slide. And when officers attempted to apprehend him, he ran, which ultimately led to him suffering a serious head injury.

But that is only part of Toki's story. It appears that this case, along with other life events, including his wife's suicide about two months after the incident at issue here, have galvanized Toki to change course. It started with taking responsibility for what he did on that BART train in February 2022 and entering an early guilty plea here. Since then, Toki has not had any new law violations, and except for some issues related to his medication compliance early in the deferred sentencing period, he has complied with all his pretrial conditions. Indeed, once doctors properly diagnosed Toki and he committed himself to taking the appropriate medication regime, he seems to have flourished. According to Pretrial, he has maintained his sobriety. He held down a full-time job before resigning so that he could become a full-time student at Berkeley City College, where he is taking 13 units this semester. And he continues to engage with his psychiatrists and mental health counselors. In short, Toki appears to be a changed man—one that has corrected the dangerous path he was on.

In the unique circumstances of this case, a sentence of incarceration creates a risk that Toki will be knocked off his current positive trajectory. Moreover, five years' probation will ensure that Toki maintains access to the services in the community that have been so necessary to his success for longer than he otherwise would if he received a prison sentence followed by three years of supervised release.

## VII.  CONCLUSION

For the foregoing reasons, the government joins Probation and recommends that the Court sentence Toki to five years' probation.

DATED: October 9, 2024                                   Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*/s/ Andrew Paulson*
ANDREW PAULSON
Assistant United States Attorney